**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert E. SMITH (98–5888); Kathy Burch (98–5894); Raymond Burch (98–5895); Danny Eakles (98–5898); Deborah Eakles (98–5939), Defendants–Appellants.**

Nos. 98–5888, 98–5894, 98–5895, 98–5898, 98–5939.

United States Court of Appeals, Sixth Circuit.

Argued and Submitted: Sept. 23, 1999

Decided and Filed: Nov. 24, 1999

Terry M. Cushing, Asst. U.S. Attorney (argued and briefed), Kent Wicker, Asst. U.S. Attorney (briefed), Louisville, Kentucky, for United States.

Brad Coffman (argued and briefed), Coffman, Beck & Lowe, Bowling Green, Kentucky, for Robert E. Smith.

Wesley Vernon Milliken (briefed), Milliken Law Firm, Bowling Green, Kentucky, for Kathy Burch.

Gregory G. Injeian (briefed), Bowling Green, Kentucky, for Raymond Earl Burch, Jr.

Raymond Earl Burch, Jr., Lexington, Kentucky, pro se.

Wesley G. Lile (briefed), Bowling Green, Kentucky, for Danny R. Eakles.

David Goin, III (briefed), Harrison & Goin, Bowling Green, Kentucky, for Deborah Eakles.

Before: MERRITT and CLAY, Circuit Judges; ALDRICH, District Judge.*

* The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

**OPINION**

MERRITT, Circuit Judge.

These appeals arise from defendants' convictions for conspiracy to commit mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341, 1343, as well as substantive convictions for mail fraud and wire fraud. Defendants first challenge the indictment, claiming that both the original indictment and a subsequently filed superseding indictment violate the five-year statute of limitations found at 18 U.S.C. § 3282. Second, defendant Robert Smith appeals the district court's denial of his motion to sever and his motion for a mistrial, as well as the district court's decision to admit Amy Payne's testimony as substantive evidence under FRE 803(5), the hearsay exception for past recollections recorded. For the reasons outlined below, we AFFIRM the decision of the district court on all issues.

**I.**

The defendants, all related by blood or marriage, were co-conspirators in a scheme to defraud insurance companies. Over a three year period, they staged approximately thirty automobile accidents and fictitious slip-and-fall episodes, for which they filed approximately sixty-five insurance claims, collecting $500,000 in insurance proceeds. Insurance investigators' attentions were drawn by "red flags," such as the sheer volume of the accidents, claimed physical pain and suffering highly disproportionate to the automobile damage, and the defendants' relationships to one another. The defendants' last staged accident occurred on January 17, 1992. After that time, the defendants continued to communicate with insurance companies, claiming damages and demanding money, until May 8, 1992.

On February 4, 1997, the Grand Jury returned a five-count indictment against twelve defendants, including appellants. Count 1 of the indictment charged the defendants with conspiracy and wire fraud for the period of February of 1989 until May 8, 1992. However, under the list of "overt acts" in the conspiracy charge, only the staged accidents, the last dated January 17, 1992, were listed. Counts 2, 3, 4 and 5 charged substantive mail and wire fraud violations, and listed the communications continuing until May 8, 1992. Defendants challenged Count 1, claiming that it violated the five-year statute of limitations and should be dismissed. Defendants' motion was denied. Thereafter, on August 5, 1997, a superseding indictment was filed which was identical to the original indictment except for the inclusion of the activities previously listed in Counts 2, 3, 4 and 5 under the "overt acts" heading in Count 1. The defendants then challenged the superseding indictment for violation of the statute of limitations. The District Court found that the superseding indictment did not broaden the charges in the original indictment, and therefore related back to the time of the filing of the original indictment, curing any statute of limitations defect. Following a jury trial, the District Court entered criminal convictions against defendants for the conspiracy charge. The District Court also entered convictions for substantive mail and wire fraud charges against defendants, Kathy and Raymond Burch, which also were appealed. For the reasons listed below, we affirm.

Once an indictment is brought, the statute of limitations does not further run as to the charges in that indictment. *United States v. Grady*, 544 F.2d 598, 601 (2d Cir.1976). In this case, the original indictment would have tolled the statute of limitations on February 4, 1997. While the defendants challenge the timeliness of both the original indictment and the superseding indictment on appeal, this challenge fails on the facts of this case. It is clear that the last act in furtherance of the conspiracy occurred on May 8, 1992. In fact, the preamble to Count 1 in the original indictment recited that the conspiracy ended May 8, 1992. Therefore, the origi-

nal indictment was filed approximately four months within the five-year limitations period. Appellants argue that the statute of limitations deadline was really January 17, 1997, the date of the last "overt act" alleged in Count 1 of the original indictment. We do not agree.

■ Appellants are correct that normally the date of the last overt act in furtherance of the conspiracy alleged in the indictment begins the clock for purposes of the five-year statute of limitations. *See Pinkerton v. United States*, 145 F.2d 252 (5th Cir.1944). The Supreme Court adopted this rule in *Brown v. Elliott*, 225 U.S. 392, 401, 32 S.Ct. 812, 56 L.Ed. 1136 (1912) ("[T]he period of limitation must be computed from the date of the overt act rather than the formation of the conspiracy .... [and] must be computed from the date of the last of them of which there is an appropriate allegation and proof.").[1]

In this case, adequate notice to the defendants is not a problem. The original indictment clearly indicated that the conspiracy ran until May 8, 1992. The original indictment named the staged accidents under the Count 1 list of "overt acts," and it also listed the later-occurring communications with the insurance companies under Counts 2, 3, 4, and 5 of the indictment. If it was error to fail to list a few of the acts alleged in Counts 2, 3, 4, and 5 under Count 1, then it was clearly an error of mere form, not of substance. A pleading defect, and nothing more, should not bar the prosecution of the defendants when a reading of the indictment as a whole gives notice that the conspiracy lasted until May 8, 1992.

■ Second, even if the original indictment was defective on its face, the superseding indictment related back to the filing date of the original indictment for statute of limitations purposes. While this issue appears to be fairly well-settled in other jurisdictions, it presents an issue of first impression for the Sixth Circuit.

■ Under the oft-quoted rule from *United States v. Grady*, 544 F.2d 598 (2d Cir.1976), "[s]ince the statute stops running with the bringing of the first indictment, a superseding indictment brought at any time while the first indictment is still validly pending, if and only if it does not broaden the charges made in the first indictment, cannot be barred by the statute of limitations." *Grady*, 544 F.2d at 601. *See also United States v. Gengo*, 808 F.2d 1, 3 (2d Cir.1986); *United States v. Friedman*, 649 F.2d 199, 203 (3rd Cir.1981); *United States v. Schmick*, 904 F.2d 936, 940 (5th Cir.1990); *United States v. Lytle*, 677 F.Supp. 1370, 1376 (N.D.Ill.1988). *Grady* and its progeny make it clear that as long as the superseding indictment does not broaden the original indictment, the superseding indictment relates back to the filing of the original indictment even if the superseding indictment is filed outside of the statute of limitations. *See Grady*, 544 F.2d at 601; *Friedman*, 649 F.2d at 204; *Schmick*, 904 F.2d at 940; *Lytle*, 677 F.Supp. at 1376. Applying this rule to the instant case, the superseding indictment dated August 5, 1997, relates back to the date of the first indictment even though the superseding indictment was issued after May 8, 1997, the last day of the statutory five-year period.

Defendants argue that the original indictment of February 4, 1997, was not "validly pending" and thus the *Grady* tolling of the limitations period does not apply. Defendants cite, in particular, *United States v. Crysopt Corp.*, 781 F.Supp. 375 (D.Md.1991), which held that a defective original indictment is a "nullity" and therefore cannot toll the statute of limitations. *See Crysopt*, 781 F.Supp. at 377–78. The defendants misconstrue what "validly pending" means. *Grady* holds that an original indictment remains pending until

---

1. The running of a conspiracy charge statute of limitations from the last overt act is not often debated. It seems that the Sixth Circuit has not addressed the *Brown v. Elliott* rule since 1923. *See Hammerschmidt v. United States*, 287 F. 817 (6th Cir.1923).

it is dismissed or until double jeopardy or due process would prohibit prosecution under it. *See Grady*, 544 F.2d at 602 n. 4. "Validly pending" under the *Grady* rule is unrelated to the issue of whether an indictment is defective or insufficient. *See United States v. Drucker*, 453 F.Supp. 741, 742 (S.D.N.Y.1978), *aff'd* 591 F.2d 1332 (2nd Cir.1978) (finding that whether or not the original indictment was defective, the indictment served to toll the statute of limitations under the *Grady* rule). If this were not the case, then the United States would simply dismiss the original indictment and refile under the savings clause of 18 U.S.C. § 3288, which allows the government, after expiration of the statute of limitations period, to refile within six months from the date of dismissal of a defective indictment. *See United States v. Charnay*, 537 F.2d 341, 355 (9th Cir.1976) (holding that a dismissal of a defective indictment that failed to state an offense triggered the six month savings clause under § 3288). The case before the court does not fall under the § 3288 line of cases, but rather the *Grady* line of cases. Under *Grady*, it is irrelevant whether the original indictment was defective or not. As in *Drucker*, the government's original indictment in the case before us was validly pending when the superseding indictment was filed. The "validly pending" language of the *Grady* test is therefore satisfied.

Far more important in the *Grady* analysis is that the superseding indictment in no way broadens the original indictment. Notice to the defendants of the charges, so that they can adequately prepare their defense, is the touchstone in determining whether a superseding indictment has broadened the original indictment. *See Grady*, 544 F.2d at 601. The *Grady*, *Friedman* and *Lytle* cases provide examples of variations in the form of an indictment analogous to the case before us. In all three cases, the courts held that moving charges or details of actions from one Count to another, or consolidating several Counts into one, are fairly innocuous changes of form that save a superseding indictment from statute of limitations preemption. In fact, the Third Circuit has held that a facially invalid original indictment, which did not allege the proper $5000 minimum amount for prosecution under the applicable statute, was corrected by a superseding indictment properly alleging the $5000 minimum without being troubled by the statute of limitations. *See Friedman*, 649 F.2d at 203–04.

In this case, the original indictment and the superseding indictment are virtually identical, except for the addition of the acts originally charged under Counts 2, 3, 4, and 5 as additional "overt acts" under Count 1. For this reason, the defendants had due notice that they would be called to defend themselves against conspiracy, mail fraud, and wire fraud charges, and the charges against them were not broadened by the superseding indictment. The superseding indictment, therefore, relates back to the filing of the original indictment on February 4, 1997, and corrects any defects in pleading that existed in the original indictment. In addition, the superseding indictment properly alleges overt acts occurring after February 4, 1992, in satisfaction of the *Brown v. Elliott* rule that overt acts must be properly alleged in the indictment in order to serve as the outer boundary for calculating the statute of limitations.[2]

Appellant Raymond Burch further argues that Count 2 of the indictment should also be dismissed on statute of limitations grounds if Count 1 is dismissed on those grounds. Given our determination that Count 1 satisfies the statute of limitations, Mr. Burch's appeal on that issue is moot.

**2.** Appellant Raymond Burch further argues that Count 2 of the indictment should also be dismissed on statute of limitations grounds if Count 1 is dismissed on those grounds. Given en our determination that Count 1 satisfies the statute of limitations, Mr. Burch's appeal on that issue is moot.

## II.

All of the defendants were tried together in this case to minimize the need to bring duplicative litigation. During the trial, the United States called witness Amy Payne, who was allegedly involved in one of the staged auto accidents occurring December 5, 1990. In a previous statement to Detective Trosper, given fifteen months after the staged accident, Payne identified defendant Robert Smith as the individual who parked the car and called the police during the December 5, 1990 staging. The United States indicated they did not intend to question Payne regarding Robert Smith's involvement in that event. Smith's counsel nevertheless requested a severance, fearing that the evidence would be revealed in cross-examination by co-defendants. The court denied the request for severance. On cross-examination by co-defendant Chris Smith, Payne was asked by other defense counsel about the statement to Detective Trosper. Reading from the previous statement, Payne testified as follows:

> MS. HAYWORTH: Who did you say was in the car behind you?
>
> AMY PAYNE: Here I said Bobby Smith was.
>
> MS. HAYWORTH: And what did you say that he did?
>
> AMY PAYNE: I said he pulled it off the road and parked it by a tree and he jumped out and laid the side-view mirror by the tree.
>
> MS. HAYWORTH: Now, who did you say parked the car?
>
> AMY PAYNE: Bobby Smith.
>
> MS. HAYWORTH: Who did you say pulled it off the road?
>
> AMY PAYNE: Bobby Smith.

J.A. at 462–63.

Payne testified that she had no present recollection of these facts, saying, "If that's who I said it was, then that's who it was. I don't remember now who it was." J.A. at 462. In addition, Ms. Payne testified that she did not intend to lie to Detective Trosper when she gave the statement and would not have lied. *See* Trial Transcript, Jan. 27, 1998, at 482. After defendant's objection, the court ruled that this testimony was admissible as a past recollection recorded under FRE 803(5). Defendant Robert Smith subsequently moved for a mistrial, and that motion was overruled. Defendant Robert Smith now appeals the district court's decisions 1) denying his motion for a severance, 2) admitting Amy Payne's testimony substantively as a past recollection recorded, and 3) denying his motion for a mistrial.

The standard of review for motions to sever is usually stated as whether the district court "abused its discretion." *United States v. Williams*, 711 F.2d 748, 750 (6th Cir.1983). The general rule in conspiracy cases is that persons indicted together should be tried together. *United States v. Dempsey*, 733 F.2d 392, 398 (6th Cir.1984), *United States v. Horton*, 847 F.2d 313, 317 (6th Cir.1988). "In order to escape the general rule, the defendant 'must carry the heavy burden of showing specific and compelling prejudice resulting from a joint trial which can be rectified only by separate trials.'" *United States v. Davis*, 809 F.2d 1194, 1207 (6th Cir.1987) (quoting *U.S. v. Pickett*, 746 F.2d 1129, 1134 (6th Cir.1984)). The fact that each defendant attempts to lay the blame at the feet of the other defendants is not reason enough for a severance without a showing that the jury is unable to treat evidence applicable to each defendant distinctively. *See United States v. Horton*, 847 F.2d 313, 317 (6th Cir.1988).

Smith argues that his co-defendant Chris Smith elicited evidence from the United States' witness which the jury would not have heard had this been a single trial of his charges, and that this evidence unfairly prejudiced his case. We find this difficult to believe. If the defendants' cases had been tried separately, Ms. Payne's testimony about Robert Smith's involvement surely would have been a part

of the prosecution's case. The district court mentioned this inevitability in its decision on this issue. Even if it were not, the inclusion of this evidence did not substantially prejudice Robert Smith's defense. In a conspiracy charge, only one overt act need be proven in connection with the conspiracy. In this case, there was evidence that Robert Smith was involved in several overt acts. Thus, the admission of this evidence did not substantially prejudice his defense. It is not an abuse of discretion on the part of the district court to deny severance of co-conspirators on these facts.

■ Defendant Robert Smith further argues, in the alternative, that the district court abused its discretion by admitting Amy Payne's testimony as substantive evidence under FRE 803(5) rather than admonishing the jury that it should be considered only for impeachment purposes. The district court's factual determinations relating to the admissibility of a past recollection recorded are reviewed under a clearly erroneous standard. *See United States v. Gessa*, 971 F.2d 1257, 1261 (6th Cir.1992) (en banc).

■ Federal Rule of Evidence 803(5) allows a document to be read to the jury as a past recollection recorded if (1) the witness once had knowledge about the facts in the document, (2) the witness now has insufficient memory to testify about the matters in the document, and (3) the document was recorded at a time when the matters were fresh in the witness' mind and the document correctly reflects the witness' knowledge of the matters. *United States v. Porter*, 986 F.2d 1014, 1016 (6th Cir.1993) (rehearing and rehearing en banc denied). In this case, the record shows that Amy Payne had insufficient memory at the time of the trial to testify about the matters, and that she intended to give a truthful and careful statement to Detective Trosper, stating that she did not and would not have lied. Defendant Robert Smith, however, challenges the freshness of the events in her memory at the time she made the statement to Detective Trosper, since that statement occurred approximately fifteen months after the events it described.

■ Contemporaneousness is not required in determining whether an event was sufficiently fresh to satisfy FRE 803(5). *See United States v. Patterson*, 678 F.2d 774, 779 (9th Cir.1982). In fact, the Advisory Committee's notes to FRE 803(5) state that "[n]o attempt is made in the exception to spell out the method of establishing the initial knowledge or the contemporaneity and accuracy of the record, leaving them to be dealt with as the circumstances of the particular case might indicate." *Patterson*, 678 F.2d at 779 (citing 28 U.S.C.App.-Rules of Evid., p. 899 (1994)). Some courts have found periods from ten months to three years to be "fresh," while others have ruled that alcohol or drugs might undermine the freshness of a record made only a few days after the event. *See Patterson*, 678 F.2d at 779 (holding a delay of ten months satisfied the freshness requirement); *United States v. Senak*, 527 F.2d 129 (7th Cir.1975) (holding a three-year delay satisfied the rule);. Defendant Robert Smith has not shown any reason why Amy Payne's testimony was not fresh in her mind at the time she had the interview with Detective Trosper, especially given Ms. Payne's testimony that she had the intent to tell Detective Trosper the truth during that interview. Given the degree of discretion involved on the part of the district court under this rule, we do not think it was clearly erroneous for the court to rule that a fifteen month delay satisfied the requirements of FRE 803(5).

Given that there was no error in denying Smith's motion for severance, nor was there error in admitting Amy Payne's testimony as a past recollection recorded, there clearly was no error justifying a declaration of mistrial.

For the foregoing reasons, the judgment of the district court is AFFIRMED.